Mr. Chief Justice Johnson delivered the opinion of the court. The only question raised by the record in this case is whether the bilL sets up such facts as to authorize the complainants to come into a court of equity. The facts relied upon are that the note described in the bill was transferred by deed of assignment and not by actual endorsement either upon the paper itself or upon any other paper attached to it, and that the bank, to whom it was originally made payable, had ceased to exist. The defendant, in support of his demurrer has cited Conway Exparte, (4 Ark. Rep. 361.) Gray et al, vs. The Real Estate Bank, (5 Ark. Rep. 93.) Roane et al, vs. Lafferty et al, (ib. 465.) Robinson et al, vs. Denton, (1 Eng. 283,) and Roane et al, vs. Brodie et al, (2 Eng. 267.) This court said in Conway Exparte, at page 361, “Itis contended that as the entire legal estate vested by operation of the deed in the whole number of the trustees, of course it cannot afterwards be divested out of them, and the legal estate pass into a less number. This argument takes for granted the point in controversy to be proved. The vesting of the estate is by operation-of the deed. If the deed be valid, it must all stand together, provided its parts can be made to harmonize. The trustees take undqr'thfc deed and by its authorityand at page 366 of the same case, it is said “ All the legal interest vests by the assignment nominally in the trustees but substantially in the cestuis que trust or creditors, (they being entitled to all the profits or equity) and the residuum, if any, after the payment of the debts, results to the stockholders or grantors. The trustees have not even a beneficiary interest in the estate : they are seized for others and not for themselves. The moment they are seized, that moment all the substantial benefits of the lie pass out oí them into others. They are merely the legal recipients or organs, by which the convey-anee is rendered valid for higher and more beneficial purposes,” There is certainly nothing in all this that can be construed into a recognition of the right in the trustees to sue at law in their own names, solely under and by virtue of the deed. Indeed the opposite idea would seem to be indicated from the fact that it is said “ all the legal interest vests by the assignment nominally in the trustees but'substantially in the cestuis que trust?’ and that “ the trustees have not even a beneficiary interest in the estate; they are seized for others and not for themselves.” and that “the moment they are seized that moment all the substantial benefits of the fee pass out of them into others.” The court, in the case of Gray et al, vs. The Real Estate Bank, (5 Ark. Rep. 93,) say expressly that they give no opinion upon the point now under consideration. They said that “ These questions, as to the legal mode of making assignments of choses in action, under the statutory provisions abovequoted, we do not conceive to be presented by the pleadings in this case, so as necessarily to require their decision, and therefore we express no opinion upon them. The plea, it is true, does not allege that the assignment was written or endorsed upon the bill, or show whether it was by deed or by parol, but it does expressly aver the assignment and delivery of the bill by the bank to James S. Conway (and several other persons named in the plea) on the 2d day of April, 1842, for value received: and the defendant in error by omitting to assign specially as cause of demurrer the objections now urged against the plea cannot take advantage thereof) according to the decision of this court in the case of Davis vs. Gibson, (2 Ark. Rep. 115,) and the court is bound to disregard or amend these defects in the plea and proceed to give judgment according to the very right of the cause, provided sufficient appear in the pleadings to enable them to do so. (Rev. Stat. Ark. ch. 166, secs. 60, 61.) The plea in this case shows unquestionably an assignment and delivery by the bank to third persons of the bill of exchange on which the suit is founded, and this is, surely, enough to enable the court to proceed to give judgment according to the very right of the canee, although the precise manner of making the assignment is not specially set out: yet ii'itbetrue, as stated, tliat the bank has assigned, transferred, made over and delivered the bill lo a third party, the presumption is a legal one and must be indulged, that the transfer or assignment was made according to law or mercantile usage and custom in such cases.” In the case of Roane et al, vs. Lafferty, (5 Ark. Rep. 465,) the declaration not only stated that the bank had made her deed of assignment on the 2d of April, 1842, but also alleged that by endorsement on said note, then made by Thomas W. Newton, cashier of the principal bank of said bank at Little Rock, and the agent of said bank ^authorized in that behalf, assigned and transferred said note. The court in that case, when passing upon the effect of the assignment said, *• In this case the appellants claim to derive title to the note, which is the foundation of the action, from the bank, the payees therein named, by an assignment thereof by her mnde to twelve of'them and three other persons, as successors and survivors of whom they sue. The note being assignable by the statute (Rev. Stat. ch. 11, sec. 12,) the assignment thereof, according to the uniform course of the adjudications of this court, vested in the assignees the legal interest in, and right of action on the note; which could not be divested otherwise than by a new assignment thereof by them to some other persons or party.” It is not pretended in that case that the legal interest in the note passed to and vested in the trustees by means of the deed of trust, but it is put upon the sole ground of the endorsement upon the note by the authorized agent of the bank. The declaration in the case of Robinson & Robinson vs. Denton, (1 Eng. 283,) also averred an assignment of the note by the cashier, and that by virtue of said assignment the plaintiffclaimed the right to sue upon it. And the case of Roane et al, vs. Brodie et al, (2 Eng. 204,) did not raise the question, as it went off upon a plea of puls darrien continuance, which plea did not controvert the right of the original trustees to institute the suit but simply denied tlieir right farther to prosecute it, since their number hud been reduced by an election held under the provisions of the deed of assignment. We consider it clear, therefore, from a careful review of all the cases cited by the defendants that the doctrine contended for by them has not been recognized by this court. The counsel for the complainants, amongst other cases, has referred us to the case of Buckner et al. vs. The Real Estate Bank, (5 Ark. Rep. 537). This case is believed to be directly in point, and also to be conclusive of the question. The court in that case said that “ The question to be decided here arises upon the demurrer to the plaintiff’s replication, which is an answer to the defendant’s plea puis (¡arrien conti uance. The replication avers that the bill of exchange upon which the suit is brought, was assigned and transferred upon the 2d f April, 1842, by deed of that date duly executed, whereby the Real Estate Bank of the State of Arkansas conveyed the same with all her estates, real and personal, choses in action and assets to certain trustees therein mentioned for the payment of all her debts and liabilities. This assignment is shown by the plea to have been made subsequent to the institution of the suit; and the inquiry now is, does the deed of assignment pass the legal estate in such manner as to divest the corporation of her right of action and convey the same to the trustees ? It is by the force of the custom of merchants that a bill of exchange is assignable. Our statute only confirms the negotiability of such instruments as it existed by the lex msrcaioria. It changes no principle of the law merchant in regard to the manner of assignments but expressly recognizes them. The jurisprudence which regulates bills of exchange, is founded upon and embodies the usages of merchants in different commercial countries and the general principle of natural law as applied to their respective rights, duties and obligations. (Story on Bil s of Exchange 25 ) A bill payable to a person or his order, is properly transferable by endorsement. “Properly,” says Justice Story, “because in no other way will the transfer convey the legal title to the holder, so that he can at law hold the other parties liable to him ex directo, whatever may be his remedy in equity.” “ If there be an assignment without endorsement, the holder will thereby acquire the rights only that he would acquire upon an assignment of a bill not negotiable.” (Story on Bills Ex., sec. 201.) A plaintiff, who sues upon a bill of exchange, must show title in the same manner as every other plaintiff. The title of an original payee is immediate and apparent upon the face of the bill. He who takes by assignment, takes a derivative title which the common law does not acknowledge. He takes title by the lex mercatoria, and the custom in such cases directs that the manner of assignment should be made by a writing called an endorsement, purporting that the contents of the bill are to be paid to a third person. And in respect to bills drawn in favor oí a person or bearer, the assignment is to be made by delivery. In such a case, the bill is not negotiable or payable to order, but to the person or bearer: it is then transferable only by delivery. Either actual or constructive delivery is indispensable to constitute a legal title to such a bill. In cases where an endorsement is necessary to pass a bill, no particular form of words are required. The word “ endorsement,” in its strict sense, imports a writing upon the back of the bill, but it is now settled that this is not essentially necessary to pass the bill. On the contrary, it would be a good endorsement if it were made upon the. face of the bill, or on another paper annexed thereto, (which is called, in France, Allonge,) and which is sometimes necessary where many successive endorsements are to be made. Chit. on Bills, ch. 5, p. 147.” In Hapkirk vs. Page, (2 Broc. 41,) Chief Justice Marshall held “ that the legal interest in a bill of exchange, according to the law merchant, could not be transferred otherwise than by an endorsement, and the endorsement must be upon the bill, or at least must accompany it; and that a general assignment by deed of all the debts of an individual cannot be considered as a negotiation of a bill upon mercantile usage, so as to authorize the holder to sue in his own name.” The doctrine here laid down conclusively shows that the deed of assignment we are here con - sidering does not transfer the legal interest in the bill to the trustees in such manner as to authorize them to sue in their own names. In other words, that it is nota good endorsement or assignment. Chitty on Bills, ch. 5, 178, 179. Ch. 6, 218, 219, 252. Kent's Com. (4 Ed.) 78. Story on Bills 221. Gibson & Johnson vs. Merrit & Fenno, 1 H. Bla. 562. Waters vs. Miller, 1 Dall. 269. Douglass vs. Wilkinson, 6 Wend. 639.” The law is precisely the same in respect to the transfer of the legal interest in promissory notes. It is laid down by Story on Promissory Notes, (p. 125, 126,) that, “ If a promissory note is originally payable to a person or his order, then it is properly transferable by endorsement. We say properly transferable, because in no other way will the transfer convey the legal title to the holder, so that he can, at law, hold the other parties liable to him ex directo, whatever may be his remedy in equity. If there be an assignment thereof without an endorsement, the holder will thereby acquire the same rights only as he would acquire upon an assignment of a note not negotiable. We think it clear and unquestionable, from these authorities, that the deed of assignment did not, jper se, convey the legal interest in the note; and that, consequently, the trustees could not have maintained a suit at law in their own names, the equitable interest alone having passed. The remaining point to be settled is, whether the trustees were bound to sue at law in the name of the Bank for their use and benefit, or were they at liberty to go into chancery ? In the case of Row vs. Dawson, (1 Ves. Sr. 331, 332,) Towson and Cowdry lent money to one Gibson, who made a draft on Swinburn, the deputy of Horace Walpole, viz: “Out of the money due to me from Horace Walpole out of the Exchequer, and what will be due at Michaelmas pay to Towson £400, and to Cowdry £200, value received.” Gibson became a bankrupt; and .the question was whether the defendant Towson and the Executors of Cow-dry were first entitled by a specific lien upon this sum due to the estate of Gibson, or whether the plaintiffs, the assignees under the commission, arc entitled to have the whole sum paid to them: it being insisted for them that this draft was iu the nature of a bill of exchange and that the property was not divested out of the bankrupt, at the time of the bankruptcy, in law or equity. The Lord Chancellor, in that case, said, “This demand and the instrument under which the defendants claim, is not a bill of exchange but a draft, not to pay generally, but out oí his particular fund, which creates no personal demand, therefore not a draft on personal credit to go in the common course of negotiation, which is necessary to bills of exchange, by draft on the general credit of the person drawing, the drawee and the in-dorser, without reference to any particular fund. The first case of which kind I remember to have been determined in B. R. not to be a bill of exchange, was a draft by an officer on the agent of his regiment to be paid out of his growing subsistence. Then what is it, for it must amount to something ? It is an agreement for valuable consideration before had to lend money on the faith of being satisfied out of this fund; which makes it a very strong case. If this is not a bill oí exchange, nor a proceeding on the personal credit of Swinburn or Gibson, it is a credit on this fund, and must amount to an assignment of so much of the debt, and though the law does not admit an assignment of a chose in action, this court docs; and any words will do ; no particular words are neccssaiy. In the case of a bond it may be assigned in equity for valuable consideration and good although no special form used.” The Lord Chancellor in this case, after having determined that the transaction under consideration amounted to an assignment in equity, proceeded to decree iu favor of Tow-son and the Executors ofCowdry for the amount transferred to them, and then directed that the cost of all parties be paid out of the remainder of the Exchequer money. This, it is true, was not a proceeding directly upon the assignment for the recovery of the sum assigned, yet it drew into it that question and it was fully sustained by the court. The mode of assignment adopted in this case by general deed . of assignment is utterly unknown to our statute and consequently could not convey more than the equitable interest in the instrument. Its being admitted to be a mere equity would seem to supersede the necessity of adding either argument or authority to prove that it might be enforced in a court of equity. This would seem to follow from the very nature of the interest involved in the controversy. But if there could be any doubt about the jurisdiction of the chancery court, in case that all parties were now in full life, which would enable the complainants to sue at law in the name of the bank for their use and benefit, that doubt is now completely dispelled when it is considered that the party who might have been made the nominal plaintiff has been, brought to experience a civil death, by which she has been deprived of all capacity to sue either at law or in equity. Under the facts as presented by the bill the complainants are not at liberty to sue at law in their own names, nor can they use the name of the bank, who was the payee of the note. ' They are therefore wholly remediless at law, and this of itself is sufficient, to give the chancery jurisdiction. The decree of the Washington circuit court in chancery is therefore reversed, annulled and set aside with costs and the cause remanded with instructions to-be proceeded in according to law and not inconsistent with this-opinion. Mr. Justice Walseu did not sit.